(81 South. 865)

O'REAR v. RICHARDSON. (6 Div. 481.)

(Court of Appeals of Alabama. April 22, 1919. Rehearing Denied May 13, 1919.)

1. APPEAL AND ERROR ☚634, 766—RECORD —CONSTRUCTION.

In action by seller of two jennets on purchase-money note, where buyer alleged that the jennets were not "in fold" by a horse so as to bring forth mule colts as guaranteed by seller, the term "in fold," used in record and briefs, will be construed to mean "in foal," since it could have no other intelligent meaning.

2. APPEAL AND ERROR ☚634, 766 — RECORD—CONSTRUCTION—"JENNIES."

In action on note given for part purchase price of two jennets alleged by defendant to have been guaranteed to be in foal at time of sale, the word "jennies" as used in record and briefs, will be taken to mean the female of an ass, and not a machine for spinning cotton thread, in view of nature of case.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Jenny.]

3. EVIDENCE ☚472(1) — WITNESSES ☚ 240(8)—LEADING QUESTION—CONCLUSION OF WITNESS—INVASION OF JURY'S PROVINCE.

A question that was leading, that invaded the province of the jury, and that called for a conclusion of the witness was properly disallowed.

4. APPEAL AND ERROR ☚882(10)—REVIEW— INVITED ERROR.

A party cannot invite action by the court by objection to testimony and assign court's action in sustaining objection as error on appeal.

5. EVIDENCE ☚500 — OPINION EVIDENCE —QUESTION—CHARACTERISTICS OF A JENNET.

In action by seller of two jennets upon purchase-money note, where defense was that the jennets were impregnated by a "jack" instead of being in foal by a horse as guaranteed, question of "how is a jennet about breeding a horse?" for purpose of showing that a jennet which would accommodate a horse, was of greater value than one who refused to so do, was properly excluded, where evidence did not show that the jennets sold would not take a stallion; the question being inappropriately framed, and not being confined to the jennets in question.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Suit by Thomas L. Richardson against W. G. O'Rear. From a judgment for plaintiff, defendant appeals. Affirmed.

Leith & Powell, of Jasper, for appellant. J. M. Pennington, of Jasper, for appellee.

BRICKEN, J. Several years ago Richardson sold O'Rear two jennets for $65 cash and a promissory note for like amount due December 1, 1911. We learn this due date from the court's oral charge, and not from the

pleadings, evidence, or briefs of counsel. The note not being paid when due, the appellee instituted suit thereon, long after the due date, and the cause coming on to be tried, the defendant alleged that he had been deceived, defrauded, and damaged, because, as he claimed, the plaintiff at the time of the sale "guaranteed" that these two specimens of the equine family were then "in fold" by a horse and would bring forth mule colts, and that the sire fees for the services rendered by the horse had been paid, all of which the defendant claims was untrue, in that the said animals of feminine gender were then and there more or less impregnated· by a "jack," and therefore brought forth "jennet" colts, and, further, that the sire fees were unpaid, but, on the contrary, had to be paid by the defendant, to which, it seems, neither the plaintiff nor the jack made objection.

[1, 2] The term "in fold" so frequently used in the record and in briefs of counsel we construe to mean "in foal," for in the connection in which this term is so frequently used it could mean nothing else and would be unintelligible, for "in fold" means "to wrap up or cover with folds;" "to inclose;" "to clasp with the arms;" "to embrace"—all of which is manifestly inapplicable and impossible to be consummated by stallions or jacks with jennets. While "foal," according to recognized authorities, means "to bring forth young," "said of animals of the horse family," "to bring forth, as a colt or filly," "said of a mare or a she ass," therefore we may safely conclude that, where the record and briefs of counsel allude to the particular jennies as being "in fold," it really means they were in foal by a jack or a stallion, as the case may be. And for like reasons we must hold that the term "jennies," as used in the record and in briefs of counsel quite frequently, does not apply to machines used in cotton mills for spinning many threads, etc., as contended by counsel for plaintiff, but must be taken to mean the female of an ass. In fact, this definition is used for the· word "jenny" by several of the recognized authorities. In the case here cotton gin machinery is not involved, but, to the contrary, the cause of action is a promissory note given for part of the purchase price of two jennets.

For one time in the history of this court no question is raised in appellant's brief as to the correctness of the rulings of the trial court·on the pleadings; the bridle seems to have been taken off the jennets, the jack, and the pleadings as well, and all parties went to it, and the intimate secrets concerning the ambitions and characteristics of the jennets were ruthlessly exposed by skilled counsel, no doubt to the satisfaction of an impartial judge, an attentive jury, and an interested audience. We would that others may emulate the example of the jennets, and their counsel as well, and remain satisfied that a trial court can sometimes rule on a question of pleading without error.

The case was duly tried, and a jury returned a verdict for plaintiff for $84.45, and, being dissatisfied therewith, and intent, no doubt, upon vindicating his position and contention, the appellant filed a $3,000 appeal bond and comes here for review. The amount of the bond probably indicates the degree of the appellant's dissatisfaction with the result of the case in the court below.

[3-5] The first question insisted by the appellant as having been improperly disallowed was leading, invaded the province of the jury, and called for a conclusion of the witness. The second and fourth were objected to by the defendant, and exception reserved by him to the court's action in sustaining his own objection. It is needless to say that the defendant could not invite action by the court and then assign such action for error here. The third question was propounded after this fashion: "Q. Mr. O'Rear, how is a jennet about breeding to a horse?" And appellant's counsel informs us that his purpose was to show that few jennets would accommodate a horse, the preference of the majority being a jack, and that a jennet that would so far forsake her species as to be served by a horse was considered by those well informed on such subjects, if not by the jack, as worth more in the market than one that stuck to the path of jennetly virtue and manifested due preference for a jack. There was no evidence offered by the defendant or otherwise that the particular jennets involved in this case would not take a stallion; and, however laudable the purpose of counsel may have been in the premises, we are of the opinion that the question was not appropriately framed to elicit the information indicated; furthermore, it should have been confined to the jennets in question, whose preferences and desires and characteristics and whose reputation for equine chastity was being considered. It therefore appears that the rulings of the trial court are free from error. There being no other questions in the record, its judgment is affirmed.

Affirmed.

SAMFORD, J., concurs. BROWN, P. J., concurs in the conclusion.